.E. R. MILLS *v.* INDEMNITY ·INSURANCE COMPANY OF NORTH AMERICA

(No. 7654)

Submitted October 18, 1933.   Decided October 31, 1933.

*Henry S. Cato* and *Rummell, Blagg & Stone,* for defendant in error.

*Robert H. C. Kay, Price, Smith & Spilman* and *J. M. Woods,* for plaintiff in error.

HATCHER, JUDGE:

The litigation between these parties has been in this Court twice before.  The first case is reported in 108 W. Va. 317, and the second in 166 S. E. 531.  We take from the latter opinion a statement of the present case.  ''The plaintiff, having contracted with the county court of Cabell County for the construction of a bridge in that county, sub-let a portion of the work to Metal Products Company, which furnished an indemnity bond to the plaintiff with the defendant as surety.

By reason of failure of the sub-contractor, the plaintiff took over the work and completed it, with the assent of the sub-contractor's surety, the defendant. Incurring large expense in completing the work, the plaintiff instituted this action of debt against the surety on the bond.'' The bond, dated April 27, 1926, was for $5,700.00 and was conditioned as follows: ''Now therefore, the condition of this obligation is such, that if the Principal shall indemnify the Obligee against loss or damage directly caused by the failure of the Principal to faithfully perform said contract, then this obligation shall be null and void; otherwise remain in full force and effect.'' The bond contained several sections limiting the liability of the surety, among which are section 5, exempting the surety in case of injury to the work by an ''act of God''; and section 6, limiting the damages arising from delay in completion of the work to ten per cent of the penalty of the bond.

The Metal Products Company never did any work on the bridge. It went into the hands of a receiver in June, 1926, and he notified plaintiff in July that he would not perform the work. Shortly afterwards, plaintiff commenced the construction.

The present appeal involves a directed verdict in favor of the plaintiff for $4,589.46. Of this amount the defendant complains of only $1,316.18. This item is for labor and material to replace certain temporary work in the river, necessary in erecting the span, which work was carried away on August 25, 1926, by a rise in the water (not exceptional) and through no negligence of the plaintiff.

Defendant takes the position (1) that damages should be assessed, if at all, as of the date of the default of the Metal Products Company; (2) that the high water was the proximate cause of the damage and not the failure of the Metal Products Company to perform; (3) that the damage was caused by an ''act of God'' and that defendant is not answerable therefor under the fifth section of the bond; and (4) that in any event, the sixth section would limit the amount recoverable to one-tenth of the penalty of the bond, or $570.00.

1. The plaintiff had suffered no damages prior to his substituted performance. He could not know at the inception of Metal Products Company's default, the amount of damages,

if any, he would suffer in performing its contract. Therefore, defendant's first point is not well taken.

2. In constructing the bridge, the plaintiff was performing what the Metal Products Company had contracted to do for him. While the high water was the immediate cause of the loss, he would not have been placed in position to have incurred the loss had it not been for the wrongful act of the Metal Products Company. Had it been complying with its contract when the rise came, the loss would have fallen on it. The evidence. shows that high water may occur in Cabell County at any time during the spring and summer months. The temporary bridge work in the river was inherently susceptible to damage from high water. Therefore damages from high water were a natural risk of a bridge contractor. That risk Metal Products Company passed on to the plaintiff by its failure to perform, and loss under that risk was a natural sequence of such failure.

A leading authority on the law of negligence says that when one has committed *a breach of duty* he is liable for "its natural and proximate effects, which may be immediate and direct or through the media of natural forces or other innocent causes or conditions. *Time, distance and the number and variety of the media* are immaterial except as they afford increased opportunity for the assertion of other intervening responsible causes." (Italics ours.) Shearman & Redfield on Negligence (6th Ed.), sec. 25. Discoursing further on proximate cause the same authority says: "Proximity in point of time or space however, is no part of the definition." Section 26. Accord: Sutherland on Damages (4th Ed.), sec. 37, pages 142-3; 45 C. J., subj. Negligence, p. 898, note 9(b). The defendant is not a voluntary surety, but a surety for a profit. Accordingly its contract will be construed most strongly in favor of the plaintiff. *Board* v. *Clemens,* 85 W. Va. 11, 100 S. E. 680. Under these rules it is clear that the continuing default of the company should be regarded in law as a proximate cause—in its relation to plaintiff—of his loss.

3. It is not necessary for us to decide whether the high water was what is termed in law "an act of God". *Vis major* excuses the party asserting it only when he himself is not at fault. The defendant is bound by the dereliction of its

principal. The Metal Products Company's continuing default concurred with the high water in occasioning plaintiff's damages. Therefore, the defendant is not excused from liability merely because the excepted peril was the ultimate cause of the damages. ''An excepted peril whether excepted by implication of law or by an express provision of contract, affords no excuse if not the proximate cause of the loss in question. Therefore, a carrier whose negligence, deviation or other violation of duty directly contributes to the loss, will not be freed from liability because the loss ultimately was due to an excepted peril.'' Williston on Contracts, sec. 1096. While the above statement specifies carriers, the rule applies with equal force to other contractors. Accord: Restatement of the Law of Contracts, sec. 457d; Shearman & Redfield, *supra*, sec. 39; Barrows on Negligence, p. 23; Thomas on Negligence (2nd Ed.), p. 235; 45 C. J., subj. Negligence, pp. 939, 940.

4. The exact wording of the sixth section of the bond excepts the defendant from liability ''for damages caused by delay in completing the work, except such damages as have actually been sustained and proved, but in no event in excess of 10% of the penal amount of this instrument.'' The plaintiff raises the point that the sixth section relates solely *to damages caused by delay,* that the damages herein were not occasioned by the mere delay of Metal Products Company but by its total failure to perform at all, and therefore the sixth condition is not applicable. We consider plaintiff's point well taken.

Perceiving no error prejudicial to the defendant, the judgment of the circuit court is affirmed.

*Affirmed.*