THE BANK OF COMMERCE OF WEST SUPERIOR, Appellant, vs. Ross and another, imp., Respondents.

*October 22 — November 8, 1895.*

(1) *New trial: Preponderance of evidence.* (2) *Promissory notes: Guaranty: Statute of frauds.*

1. Where there was evidence to sustain a verdict it was for the trial court to say whether the verdict was so clearly against the preponderance of the evidence that the ends of justice required a new trial, and its decision cannot be re-examined in this court.
2. A new consideration is essential to the validity of a guaranty of a note which is a subsisting obligation when the guaranty is made.

APPEAL from a judgment of the circuit court for Douglas county: R. D. MARSHALL, Circuit Judge. *Affirmed.*

This action was for the recovery of the sum of $4,000 and interest at ten per cent. per annum from January 9, 1892, for which the defendant Charles Lagro had given the plaintiff his promissory note October 10, 1891, and upon the several guaranty of payment of the same, waiving demand and notice of nonpayment, of the defendants *Frank A. Ross* and *H. O. Walseth.* The defendant Lagro did not answer. The defendants *Ross* and *Walseth* answered separately, among other things, in substance, that at the time they each guarantied the payment of the note the plaintiff was the lawful owner and holder thereof and so represented itself to be, and

that they each signed the guaranty relying on said representation and believing it to be true, but without consideration and solely for the accommodation of the plaintiff.

The defendant *Ross* testified, in substance, that he signed the guaranty at the request of Mr. Brooks, the cashier of the plaintiff bank, in the bank, the defendant Lagro not being present; that he had previously seen it in Lagro's hands, and had been requested by him to sign the note, but had refused; that Brooks took the note, at the time he signed the guaranty, from his desk in the front room of the bank; that he signed it on a little desk in the rear of the lobby of the bank; that in answer to his question he told him he had refused to sign the Lagro note, and he then turned around and took the note from the desk and came out into the lobby and beckoned him back into the back end; that they stood there, facing the wall, with their backs to the counter, and he said: "Now, we have this note here. We cannot use it in its present condition. It is single-name paper,— paper with only one name on it." Lagro's name was on it at that time. He said, "We would like to get it in shape so we can use it for rediscount purposes if we should want to." He told him he could not afford to sign the note; it was too large a note; it would affect his credit there. He was doing banking there, and was owing quite an amount; and Brooks said it would not affect his credit; that they would not treat it as a liability of his at all; that it was amply secured by real-estate security, but that they could not use that kind of security for the purpose of rediscounting. He (*Ross*) hesitated quite a while, and they talked back and forth, Brooks urging him to sign, and he (*Ross*) giving excuses for not signing; and finally he yielded and put his name on the back of the note. "He then said to me: 'I was going to ask you to sign another note [naming it]. You kicked so hard against signing this that I guess I will not ask you?'" At the time he signed, Lagro's was the only name on the

note. He understood that the note was to be taken in lieu of a former note to be surrendered up, but did not know whether the old note had been surrendered and the new note accepted in payment, when he signed the guaranty on the note. When Brooks said, "We have that note here," it was as much as to say the bank had it.

The defendant *Walseth* testified that when he signed the note as guarantor the names of the defendants Lagro and *Ross* were on it; that the note was brought to him to sign by Lagro.

The cashier, Brooks, on the part of the plaintiff, testified that he did not state to *Ross:* "We have this note here. It is single-name paper, and we cannot use it for rediscount purposes,"— nor anything in substance like that; that they had not accepted the note; that his recollection was that *Ross* came in and told him that Lagro had told him that he (witness) wanted to see him in reference to indorsing this note for $4,000; that they had some conversation, and he did not remember just what was said in regard to it, but *Mr. Ross* signed the note, not at his (Brooks') request, but at the request of Mr. Lagro; that he did not ask *Ross* to sign as an accommodation to him or to the bank; that at the time *Ross* signed, the note had not been delivered to the bank as a subsisting or existing security, and the old note had not been delivered up, but was after the signing of the note in question by both *Mr. Ross* and *Mr. Walseth.* His testimony extended to other matters, and evidence was given tending to show that neither *Ross* nor Brooks remembered clearly what the real facts were. The evidence that *Walseth* did not sign the guaranty until after *Ross* did was undisputed.

The court submitted two questions to the jury to be answered and returned with their general verdict, namely: (1) Was the plaintiff the owner of the note in suit as an outstanding obligation against the maker, Charles Lagro, at the

time defendant *Ross* placed his name on the back of it?
(2) Did the cashier, Brooks, at the time the defendant *Ross*
placed his name on the back of the note, represent to *Mr.
Ross* that the plaintiff was then the owner of said note as an
outstanding obligation? The jury found a verdict in favor
of the defendants *Ross* and *Walseth,* and answered both ques-
tions in the affirmative. The plaintiff moved to set aside
the verdict and for a new trial on the ground, among others,
that the verdict was contrary to the law and was contrary
to the evidence. The motion was denied, and judgment was
rendered on the verdict against the plaintiff, from which it
appealed.

For the appellant there was a brief by *Whitford & Steele,*
and oral argument by *R. D. Whitford.*

For the respondents there was a brief signed by *Ross,
Dwyer & Hanitch* and *George C. Cooper,* attorneys for *Ross,*
and *Butler & Butler,* attorneys for *Walseth;* and the cause
was argued orally by *W. D. Dwyer.*

PINNEY, J. The case was submitted to the jury, as the
record shows, upon a charge quite favorable to the plaintiff,
and it is evident, upon a perusal of the testimony, that, al-
though the burden of proof was on the defendants, there
was sufficient evidence to go to the jury to support the de-
fense and to sustain the verdict. There was evidence upon
both sides of the question, and it was clearly a question for
the jury to say, in arriving at a verdict, to what weight the
evidence was entitled. Under such circumstances it was for
the circuit court to say whether the verdict was so clearly
against the preponderance of the evidence that the ends of
justice required a new trial. This court is powerless to
grant any relief against a verdict upon such ground. It can
interfere only when there is an entire want of competent tes-
timony on some vital point essential to sustain the verdict, so
that the question whether it shall stand or not becomes sub-

stantially a question of law. The question whether the verdict answers the substantial ends of justice, there being evidence, though not a preponderance of evidence, to sustain it, is entirely and finally for the determination of the trial court, and its decision cannot be re-examined in this court.

The verdict establishes the fact that the plaintiff owned and held the note of Lagro as a subsisting obligation against him when the defendants *Ross* and *Walseth* guarantied its payment. Their guaranty was, therefore, an agreement to answer for the debt or default of Lagro, and this required some *new* consideration. *Osborne v. Farmers' L. & T. Co.* 16 Wis. 36. It was not claimed that there was any such consideration for the guaranty; indeed, the undisputed evidence shows that they were gratuitous guarantors, and the guaranty, being without consideration, was void. R. S. sec. 2307, subd. 2.

It follows that the judgment of the circuit court is correct.

*By the Court.*— The judgment of the circuit court is affirmed.

MARSHALL, J., took no part.