419 P.2d 85

**D. W. JAQUAYS & CO., an Arizona corporation, Appellant,**

**v.**

**FIRST SECURITY BANK, an Arizona banking corporation, Appellee.**

**No. 8035.**

Supreme Court of Arizona.

In Banc.

Oct. 19, 1966.

Rehearing Denied Nov. 15, 1966.

302

Lovell B. Lieurance, Phoenix, for appellant.

Johnson, Shelley, Roberts & Riggs, Mesa, for appellee.

UDALL, Justice.

This is an appeal from an award of a summary judgment to the plaintiff, First Security Bank (hereinafter referred to as plaintiff).

On July 25, 1961 the defendant (D. W. Jaquays & Company) sold and delivered to Mesa Steel and Manufacturing Company one air compressor, on a conditional sales contract. Subsequent to the execution and delivery of the contract, defendant assigned and transferred to the Valley National Bank all of its right, title and interest in the contract.

On or about September 20, 1961 the purchaser Mesa Steel requested, and defendant agreed to transfer the conditional sales contract from the Valley National Bank to plaintiff First Security Bank.

Instead of taking an assignment of the contract from the Valley National Bank, plaintiff prepared an identical contract; the defendant transferred to plaintiff all of defendant's interest in the contract and executed, on the instrument, the following unconditional guaranty:

"The undersigned unconditionally guarantees to the First Security Bank the faithful performance of the above contract, and in connection therewith, consents, without notice, to any extensions or forbearance by assignee, and waives any demand or notice of default.

D. W. Jaquays & Co.

By /s/ D. R. Lindsay

Title Sales Mgr."

At some time between the 1st and 19th day of September, 1961 the defendant and Mesa Steel executed a second conditional sales contract by which Mesa Steel purchased one air drill and one air hoist. The defendant transferred this second contract to plaintiff and executed thereon, on September 19, 1961, an unconditional guaranty exactly like the guaranty previously executed in conjunction with the first conditional sales contract.

Subsequent to the transactions above, Mesa Steel was adjudicated a bankrupt. Defendant petitioned the bankruptcy court for reclamation of the equipment covered by the sales contracts, but the petition was denied on the ground that neither of the contracts was recorded in the office of the Maricopa County Recorder, as required by A.R.S. § 33-753, with the result that title was not effectively reserved as against the trustee in bankruptcy.

Following refusal of the bankruptcy court to allow reclamation, defendant refused to honor its unconditional guaranty agreements with the plaintiff. Plaintiff then brought this suit against defendant, alleging a breach of the guaranty agreement and seeking to recover the unpaid balance of the principal sum due under the sales contracts, with accrued interest, and the sum of $1,000 as reasonable attorney's fees, under the provisions of the sales contracts which obligated the purchaser to pay the costs of collection. After giving due consideration to the pleadings, to supporting memoranda and to defendant's answers to plaintiff's interrogatories, the trial court granted plaintiff's motion for summary judgment.

On this appeal defendant claims the trial court erred in granting summary judgment because, as a matter of law, defendant was entitled to a judgment awarding him a set-off or a release to the extent of his injury caused by plaintiff's failure to record the conditional sales contracts.

In his amended answer, the allegations of which we must accept as true for the purpose of reviewing the correctness of an award of a summary judgment to the plaintiff, defendant alleged that at all times the plaintiff had exclusive control, custody and possession of the two sales contracts. This allegation was never disputed by the plaintiff. Defendant argued that consequently (1) the plaintiff had a duty to record the contracts, and (2) the breach of the duty relieved defendant from liability on the guaranties to the extent of his injury.

Defendant's proposition that plaintiff had an implied-in-law duty to record the contracts is based on the following principles of the law of suretyship and subrogation, as stated in 50 Am.Jur., Suretyship, § 109 and § 118:

"109. *Generally.*—A surety is entitled to be subrogated to the benefit of all the securities and means of payment under the creditor's control, and so, in the absence of assent, waiver, or estoppel, he is generally released by any act of the creditor which deprives him of such right * * *."

"118. *Failure to Perfect or Record Security.*—The collateral security taken by a creditor may require some act on the part of the creditor to make it a valid security. Where such is the case, the law implies an agreement on his part to perform that act. If he neglects or fails to do so and the security is thereby lost or impaired, the surety may be discharged

to the extent of his loss or injury * * *."

Although the above principles are supported by the weight of authority, Sullivan v. State, to Use of School Fund, 59 Ark. 47, 26 S.W. 194; Hendryx v. Evans, 120 Iowa 310, 94 N.W. 853; Lewis v. Paul Brown Realty & Investment Co., 354 Mo. 1025, 193 S.W.2d 13; Bennett v. Taylor, 43 Tex.Civ. App. 30, 93 S.W. 704, the plaintiff claims that they do not apply in a case involving an unconditional guaranty.

■ Unquestionably the defendant, as a guarantor, had a right of subrogation. Winklemen v. Sides, 31 Cal.App.2d 387, 88 P.2d 147; Union Trust Co. of Rochester v. Willsea, 275 N.Y. 164, 9 N.E.2d 820, 112 A.L.R. 1175; Winter v. Trepte, 234 Wis. 193, 290 N.W. 599. However, plaintiff argues that the legal effect of an unconditional guaranty is such that it is no defense to the guarantor that the creditor destroyed or impaired the subrogation right by failing to record and thus preserve the value of security for the benefit of the guarantor.

In support of his proposition that such is the effect of an unconditional guaranty, plaintiff refers to the case of Joe Heaston Tractor & Implement Co. v. Securities Acceptance Corporation, 243 F.2d 196 (10 Cir. 1957). In the Heaston case the contract of the guarantor contained the following provision, 243 F.2d 196, at 198:

"* * *. The undersigned grants to the Finance Company [the guarantee] full power to modify or change terms of any of the Liabilities, to agree to forbearance with respect thereto, *to consent to the substitution or exchange or release of collateral thereto,* and extension of time of payment of the Liabilities." (emphasis added)

Although it is not entirely clear to what extent the court in the Heaston case was influenced by the fact that the guarantor consented to an exchange or release of collateral securities by the guarantee, the fact that such consent was unequivocally given in the contract of guaranty sufficiently distinguishes the Heaston case from the one

before us on this appeal. If we assume without deciding that a guarantor who consents to a release of collateral security by the guarantee cannot avoid liability on his guaranty because a release has prejudiced his subrogation rights, it does not necessarily follow that an unconditional guarantor, who in his contract does not unequivocally consent to an exchange or surrender of securities, is likewise precluded from defending on the ground that subrogation rights have been impaired.

It is argued by the plaintiff that the guaranties executed by the defendant in this case do express a consent to the failure of the plaintiff to record the conditional sales contracts. Plaintiff refers to the following language of the guaranties:

"* * * and in connection therewith consents without notice to any extensions or forbearance by assignee, and waives any demand or notice of default."

On the basis of the above language the plaintiff concludes that the defendant consented to *any* forbearance by the plaintiff, including any failure of the plaintiff to pursue any legal right against the purchaser Mesa Steel.

■ We do not agree with plaintiff's conclusion that an unconditional guarantor, by consenting to "any extension or forbearance", thereby loses his defense that a subrogation right has been impaired or destroyed by the guarantee's failure to preserve security by recording. The doctrine of subrogation arises not from contract but from principles of equity. As this Court stated in Mosher v. Conway, 45 Ariz. 463, at 468, 46 P.2d 110, at 112:

"* * * Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. It is a creature of equity * * * Its purpose is the prevention of injustice and is the mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it. * * *"

■ If the destruction or impairment of such a right is to be waived by a guarantor, it should only be by the most unequivocal language in the guaranty agreement. The right does not originate in contract, and it cannot lightly be destroyed by contract.

In support of his contention plaintiff also refers to United States v. Klebe Tool & Die Company, 5 Wis.2d 392, 92 N.W.2d 868. We note that in this case the guarantor granted full power to the guarantee, in its uncontrolled discretion, to deal in any manner with collateral security. Our conclusions expressed above with regard to the Heaston case, apply equally to the Klebe case and preclude the necessity of further comment.

■ In view of the above we are of the opinion that the plaintiff had an implied-in-law duty to record the sales contracts, that performance of the duty was not waived by the unconditional guaranties executed by defendant, that the defendant was entitled to be released from liability in his guaranties to the extent of his loss caused by the failure to record, and that the trial court erroneously granted plaintiff's motion for summary judgment for the full amount of the balance due on the contracts, plus interest.

■■ It does not follow from the foregoing that the defendant is automatically entitled to a judgment. By the general rule, the liability of the defendant on his guaranty remains, and he is simply released from that liability to the extent of the injury caused by the failure to record. (See 50 Am.Jur., Suretyship, § 109 and § 118 and cases cited, infra.) Whether and to what extent the defendant was injured in this case depends upon a determination of the fair market value of the chattels at the time when defendant might have regained them from the trustee in bankruptcy. If the fair market value was equal to or greater than the principal and interest due the plaintiff on the sales contracts, then presumably the defendant, by being subrogated to the rights of the plaintiff, would have been able to recoup all that he was obli-

gated to pay on the guaranties, and since the right was wholly lost, the extent of his injury due to the failure to record would be the full contract balance with interest. In such a case defendant would be entitled to judgment relieving him of all liability on the guaranties, so far as the principal sum and interest are concerned.

If the fair market value of the chattels at the time when they might have been repossessed was less than the balance due on the sales contracts, plus interest, then the defendant, who remained liable to the plaintiff for the full balance of the purchase price, plus interest, would be released only to the extent of the fair market value, and the plaintiff would be entitled to a judgment awarding him the difference between the contract balance, plus interest, and the fair market value.

In his amended answer defendant sought to be released in the amount of $5,500.00, as against the claim of the plaintiff for the sum of $5,485.15, plus interest. But there is no evidence of fair market value in the record. A judgment releasing defendant of liability entirely cannot be based on the mere allegation of fair market value. On a retrial it will be necessary for the trial court to receive evidence of the market value, and having determined the sum, to enter judgment for the defendant or for the plaintiff in accordance with the above instructions.

There remains for our consideration the question of whether the plaintiff is entitled to recover reasonable attorney's fees.

In his first assignment of error, defendant claims the trial court erroneously decided there was no genuine issue of material fact raised regarding the right of the Bank to recover reasonable attorney's fees. Obviously the lower court regarded the question as being one of law and decided it adversely to the defendant, for it awarded the Bank the sum of $1,000 as reasonable attorney's fees.

Our examination of the record convinces us that the question of fees was a legal, not a factual one, but from our examination

of the law we think the trial court decided the legal issue incorrectly and that, as a matter of law, defendant was not obligated to pay any attorney's fees to the plaintiff.

In its complaint the Bank made the following allegation with regard to defendant's liability as guarantor for reasonable attorney's fees:

"9. That both of the contracts [the sales contracts] above referred to provide that the purchaser and guarantor agree to pay all costs of collecting any amount under the contract, including without limiting the generality of same, a reasonable attorney's fee * * *."

In response to plaintiff's allegation, defendant, in his amended answer alleged as follows:

"9. Referring to paragraph 9 [of plaintiff's complaint] admits that the contracts referred to provide that purchaser agrees to pay all costs of collecting any amount under the contract(s), including without limiting the generality of same, a reasonable attorney's fee * * *."

Regarding the same issue, defendant's answer to plaintiff's interrogatories Nos. 19, 20, reads:

"We admit that both contracts referred to provide that the purchaser, Mesa Steel, agreed to pay as * * * set out in paragraph 9 * * *. We deny that defendant [as guarantor] so agreed to pay as set forth in paragraph 9, or that the sum of $1,000.00 is a reasonable attorney's fee."

It is apparent from the material quoted above that the parties were referring to the following provision of the conditional sales contracts:

"Purchaser agrees to pay all costs of collecting any amount under this contract, including, without limiting the generality of the foregoing, a reasonable attorney's fee, if this contract is placed in the hands of an attorney by the Seller * *."

Defendant claimed, in his answers to interrogatories, that only the purchaser, and not the defendant as guarantor, was liable under the quoted portion of the sales contracts, and counsel for both parties based their entire argument upon the above section of those contracts. In so doing, they failed to clarify the issue properly, for they lost sight of the fact that plaintiff's suit was on the contract of guaranty and the attorney's fees which plaintiff sought to recover, were incurred, not in collecting any amount or enforcing his rights as assignee under the sales contracts, but rather, in plaintiff's attempt to enforce the guaranty contract against the defendant. Whether a guarantor is liable for reasonable attorney's fees incurred in enforcing the guaranty agreement depends on the terms of the contract of guaranty. The nature of the problem involved and the solution, with which we are in agreement, is well stated in 38 C.J.S. Guaranty § 58, p. 1215:

"Costs of Suit on Guaranty: Even though the guarantor expressly agrees to become bound for the costs of collection or performance, he is not liable for costs of a suit on the guaranty, unless the terms of the guaranty expressly cover such costs or attorney's fees."

Although we may assume that the defendant guaranteed the costs of collection of a suit to enforce the sales contracts against the purchaser, he is not liable for the costs of enforcing the guaranty agreement unless that agreement so provides. The terms of the unconditional guaranty are unambiguous, and they clearly do not express any promise by defendant to pay the costs of a suit brought to enforce the guaranty. It follows as a matter of law that defendant is not liable to the plaintiff for attorney's fees, and the trial court erred in awarding plaintiff the sum of $1,000.00.

For the reasons indicated above, the judgment of the trial court granting plaintiff's motion for summary judgment is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

Counsel for the plaintiff requests that this Court award additional attorney's fees for prosecuting this appeal. Since

counsel has not indicated any reason or authority why such a request should be granted, when the finding of this Court is in favor of the appellant, the request is denied.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and LOCKWOOD and McFAR-LAND, JJ., concur.